**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WENDY L. SANTIAGO, | ) | CASE NO. 4:11-cv-2316 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

Plaintiff, Wendy L. Santiago ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("the Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On September 15, 2009, Plaintiff filed applications for a POD, DIB, and SSI and alleged a disability onset date of January 10, 2009. (Tr. 10.) The applications were denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 10.) On May 5, 2011, an ALJ held Plaintiff's hearing. (Tr. 10.) Plaintiff appeared, was represented by counsel, and testified. (Tr. 10.) A vocational expert ("VE") also appeared and testified. (Tr. 10.) On May 11, 2011, the ALJ found Plaintiff not disabled. (Tr. 20.) On September 19, 2011, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On October 28, 2011, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) On March 30, 2012, Plaintiff filed her Brief on the Merits. (Doc. No. 15.) On May 14, 2012, the Commissioner filed his Brief on the Merits. (Doc. No. 16.) Plaintiff did not file a reply brief.

Plaintiff's argument is not clear; however, it appears that Plaintiff argues she is entitled to an immediate award of benefits because the VE allegedly testified that a hypothetical person with Plaintiff's personal and vocational characteristics could not perform any work.[1]

---

[1] Plaintiff also states that her counsel advanced several arguments before the Appeals Council:

> The decision of the ALJ is not supported by substantial evidence: 1. the claimant cannot sustain fulltime sga due to her non-exertional problems; 2. the ALJ ignored counsel's questions to the VE, which were predicated on the ALJ's own hypotheticals; and 3. footnote 1, page 10, is factually incorrect and skews the decision. The claimant

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Plaintiff was 28 years old on the date she filed her applications and 30 years old on the date of her hearing. (*See* Tr. 31.) She completed the twelfth grade, although she required special education classes. (Tr. 31-32.) She had past relevant work experience as a cleaner in a hotel. (Tr. 19.)

### B.   Relevant Medical Evidence

The following summary of medical evidence will relate only to Plaintiff's mental condition because only Plaintiff's mental condition is relevant to the disposition of Plaintiff's challenge to the Commissioner's final decision.

On May 18, 2009, Plaintiff began treatment for depression with Dr. Anil C. Nalluri, M.D. (Tr. 276-79.) Dr. Nalluri indicated that Plaintiff reported the following. Plaintiff felt "stressed out," helpless, and hopeless; and she was "easily agitated and irritated." (Tr. 276.) Her symptoms began when she was 16 years old and had become worse over time. (Tr. 276.) Upon examination, Dr. Nalluri further indicated that Plaintiff appeared "moderately depressed." (Tr. 276.) Dr. Nalluri assigned Plaintiff a Global

---

cannot <u>sustain</u> s.g.a.

(Pl.'s Br. 3.) Plaintiff does not, however, provide any further explanation. To the extent Plaintiff intends to argue additional assignments of error, any such arguments are waived. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997)).

Assessment of Functioning ("GAF") score of 50;[2] diagnosed Plaintiff with a depressive disorder not otherwise specified; and prescribed Prozac.  (Tr. 277.)

Dr. Nalluri continued to treat Plaintiff on a monthly basis between May 2009 and February 2010.  (Tr. 272-75.)  During this period, Plaintiff continued to complain of depression, anxiety, insomnia, crying spells, stress, low self-image, and social withdrawal.  (Tr. 272-75.)  After initial trials on other medication, Dr. Nalluri prescribed Diazepam.  (Tr. 272-75.)  On January 22, 2010, Dr. Nalluri referred Plaintiff to Valley Counseling for "further follow-up."  (Tr. 273.)

On March 9, 2010, Plaintiff began treatment with Dr. G. C. Ariza, M.D.  (Tr. 285.)  Dr. Ariza indicated that Plantiff complained of anxiety, depression, and "rapid mood swings"; but Dr. Ariza observed Plaintiff to be calm and pleasant.  (Tr. 285.)  Dr. Ariza also noted that Plaintiff was oriented in all three spheres, and that her attention and concentration were normal.  (Tr. 285.)  Dr. Ariza assigned Plaintiff a GAF score of between 40 and 45; diagnosed Plaintiff with a dysthymic disorder, major depressive disorder, and mild mental retardation; and prescribed Plaintiff Zoloft and Abilify.  (Tr. 285-86.)

On June 16, 2010, Dr. Ariza indicated that Plaintiff reported she felt calmer and more comfortable but continued to experience episodes of anger once a week.  (Tr. 287.)  On July 14, 2010, Dr. Ariza indicated that Plaintiff presented calm, pleasant, and

---

[2] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning.  A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. rev., 2000).

in a good mood; and that Plaintiff reported going out more and getting along with her boyfriend. (Tr. 287.)

On November 19, 2009, Plaintiff presented to Dr. Andrea M. VanEstenberg, Ph.D., for a consultative psychological evaluation. (Tr. 240-47.) Dr. VanEstenberg assigned Plaintiff a GAF score of 60[3] and indicated that Plaintiff's "most serious symptoms are regular reports of depression and occasional reports of anxiety." (Tr. 246.) Dr. VanEstenberg opined that Plaintiff was moderately impaired in her ability to relate to others; mildly impaired in her ability to understand, remember, and follow instructions; not impaired in her ability to maintain attention, concentration, persistence, and pace to perform routine tasks; and mildly impaired in her ability to withstand the stress and pressure associated with day-to-day expectations and activities. (Tr. 247.) In sum, Dr. VanEstenberg concluded that Plaintiff "does have mental stress tolerance to perform at least simple repetitive tasks and to interact with the public with supervision." (Tr. 247.)

On December 10, 2009, state agency consultative psychologist Bruce Goldsmith, Ph.D., performed a Psychiatric Review Technique and assessed Plaintiff's mental residual functional capacity ("RFC"). (Tr. 251-67.) Dr. Goldsmith indicated the following in his Psychiatric Review Technique. Dr. Goldsmith assessed Plaintiff under Listing 12.04 regarding affective disorders and Listing 12.06 regarding anxiety-related

---

[3] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *See Diagnostic and Statistical Manual of Mental Disorders*, supra note 2 at 34.

5

disorders and found that Plaintiff had moderate difficulties maintaining social functioning; mild difficulties maintaining concentration, persistence or pace and in activities of daily living; and no episodes of decompensation of extended duration. (Tr. 251, 261.)  Dr. Goldsmith opined in his mental RFC assessment that Plaintiff was moderately impaired in her ability to relate to others; mildly impaired in her ability to understand, remember, and follow instructions; and not impaired in her abilities to maintain attention, concentration, persistence, and pace, and to withstand the stress and pressure associated with day-to-day work activities. (Tr. 268.) Dr. Goldsmith concluded that Plaintiff "would be able to complete simple, repetitive tasks, interact with others on a superficial level and work in a setting [without] strict time constrains or production quotas." (Tr. 268.)

### C. Hearing Testimony

#### 1. Plaintiff's Hearing Testimony

Plaintiff testified at her hearing as follows. Plaintiff left her past full-time job cleaning at a hotel because her employer began cutting work hours, and she began suffering back pain that interfered with her ability to perform the job. (*See* Tr. 34-35.) She also suffered depression and presented to a psychiatrist for treatment. (Tr. 36-37.) She suffered depressive symptoms "every other day," which made her feel sad and unmotivated. (Tr. 37.) On such occasions, she stayed in her house. (Tr. 37.) Sometimes, she enjoyed being around people because she could talk with them; other times, she did not enjoy being around people because she wanted to be alone. (Tr. 37.) Her depressive episodes lasted for "a couple hours" at a time. (Tr. 37.)

When Plaintiff was a teenager she obtained treatment after expressing thoughts of suicide.  (Tr. 38.)  She took medication every day for her depression, and she often sat in her bed and took naps.  (Tr. 38.)  She had bouts of crying that lasted for "a couple of minutes" at a time.  (Tr. 43.)  She was "doing a little bit better" since obtaining treatment with psychologists.  (Tr. 38.)

Plaintiff also had anxiety and anger, and she "threw stuff" in her house twice a week.  (Tr. 39.)  She had problems remembering.  (Tr. 40.)  And she sometimes heard voices or felt as if someone were following her.  (Tr. 41.)  However, her depression was her "main reason" for being unable to work.  (Tr. 43-44.)

### 2.    Vocational Expert's Hearing Testimony

The ALJ posed the following hypothetical to the VE:

> [A]ssume a hypothetical individual born on November 4, 1980[,] with a limited education and work experience as you've described it. Please further assume the individual has the residual functional capacity to perform work at all exertion levels except the individual is limited to understanding, remembering and carrying out simple instructions and completing simple, repetitive tasks. Is limited to only occasional superficial interaction with coworkers and the public with no transactional interaction such as sales and negotiation and is limited to no production rate piece work but rather goal oriented work.

(Tr. 48-49.)  The VE testified that such a person could perform Plaintiff's past relevant work.  (Tr. 49.)

Plaintiff's attorney asked the VE whether a hypothetical person with Plaintiff's personal characteristics could perform Plaintiff's past relevant work or any other work if she were "moderately impaired in her ability to relate to others[;] . . . mildly impaired in her ability to understand and remember to follow instructions even at the simple exertion level[;]    . . . mildly impaired in her ability to withstand the stress and pressures

associated with day to day expectations of activities[;] and . . . had a GAF of 40 to 45."

(Tr. 49-50.) The VE responded as follows:

> I feel that with a moderate impairment in relating to others, remembering, understanding and falling out and also dealing with the stress associated with [the] everyday work place I think that it would probably effect [sic] the maintainability of the job. They'd be able to perform it but I think that maintaining it would be the issue more than anything else. And I, I feel it would be very similar to being off task probably a good 15 to 20 percent of the time and therefore it would be so severe that there'd be no jobs that they could maintain.

(Tr. 50.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that

8

"significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since January 10, 2009, the alleged onset date.

3. The claimant has the following severe impairments: depressive disorder and generalized anxiety disorder.

4. The claimant does not have an impairment of combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple instructions and complete simple, repetitive tasks; she is limited to

>     occasional and superficial interaction with co-workers and the public, with no transactional interaction, such as sales of negotiation; and she can perform goal oriented work, but not . . . production rate pace work.
>
> 6.  The claimant is capable of performing past relevant work as a cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7.  The claimant has not been under a disability, as defined in the Social Security Act, from January 10, 2009, through the date of this decision.

(Tr. 12-19.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281

10

(6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. The ALJ's Hypothetical to the VE

Plaintiff appears to argue that she is entitled to an immediate award of benefits because:

1. The medical records and opinions from Dr. VanEstenberg, Dr. Nalluri, and Dr. Ariza support the conclusion that Plaintiff was moderately impaired in her ability to relate to others; mildly impaired in her ability to understand, remember, and follow instructions; mildly impaired in her ability to withstand the stress and pressures associated with day-to-day activities; and had a GAF score of between 40 and 45; and

2. The VE testified a hypothetical person with Plaintiff's personal characteristics and said limitations would be precluded from performing any work.

Plaintiff misconstrues the VE's testimony. The VE testified that a hypothetical person with Plaintiff's personal characteristics and "moderate impairment in relating to others, remembering, understanding and falling out and also dealing with the stress associated with [the] everyday work place" would be precluded from performing any work. Plaintiff has provided no basis to conclude she was so moderately limited. To the contrary, the ALJ gave full weight to Dr. VanEstenberg's and Dr. Goldsmith's opinions that Plaintiff was moderately limited only in relating with others and that Plaintiff was *mildly* or *not* impaired in her abilities to understand, remember, and follow instructions; maintain attention, concentration, persistence, or pace; and withstand the stress and pressure

associated with day-to-day work activities.  (Tr. 18.)  The ALJ's hypothetical to the VE adequately accounts for such limitations.  Plaintiff has not provided, and the Court does not find any basis to conclude the ALJ should have included additional limitations in his hypothetical to the VE; accordingly, this assignment of error is not well taken.

### VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

*s/ Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date:  August 14, 2012